IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| JORGE JAVIER NIEVES DE JESUS, | |
| Plaintiff, | CIVIL ACTION |
| v. | NO. 23-680 |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

## OPINION

Slomsky, J.                                                                 May 24, 2024

## I.      INTRODUCTION

Before the Court is the Objections of Plaintiff Jorge Javier Nieves De Jesus ("Plaintiff") to the Report and Recommendation ("R&R") of United States Magistrate Judge Scott W. Reid.  (Doc. No. 22.)  On February 2, 2023, Plaintiff filed a Complaint against Defendant Kilolo Kijakazi, Acting Commissioner of the United States Social Security Administration ("Defendant" or "Commissioner") seeking review of Defendant's final decision denying Plaintiff's claim for Disability Insurance Benefits ("DIB").  (Doc. No. 1.)  On September 1, 2023, the Court referred the matter to Magistrate Judge Reid for an R&R.  (Doc. No. 20.)  On September 28, 2023, Magistrate Judge Reid filed the R&R, recommending that Plaintiff's request for review be denied and judgment entered in favor of Defendant.  (Doc. No. 21.)  On October 4, 2023, Plaintiff filed his objections to the R&R.  (Doc. No. 22.)  On October 13, 2023, Defendant filed a Response. (Doc. No. 23.)

Pursuant to 28 U.S.C. § 636(b)(1), the Court has conducted a de novo review of the portions of the R&R to which an objection has been made.  After an independent review of the

Administrative Record ("Record") and for the reasons that follow, the Court will adopt and approve the R&R (Doc. No. 21) in its entirety and enter judgment in favor of Defendant.

## II.     BACKGROUND

### A.     Factual Background and Procedural History

Plaintiff was born on March 11, 1983.  (Administrative Record ("R.") at 242.)  The highest grade that Plaintiff recalls completing in school is the sixth grade.  (R. at 45.)  He previously worked for a landscaping company and as a metal worker.  (R. at 52, 262.)  In 2014, Plaintiff was convicted of attempted murder and aggravated assault after he attacked a co-worker.  (R. at 28-29, 360.)

On August 31, 2020, Plaintiff applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").  (R. at 242, 261.)  He maintains that he has a disability caused by depression, anxiety, and bipolar disorder.  (Id.)

On September 7, 2020, Plaintiff's application for SSI was denied because he owned three vehicles that exceeded the countable resource limit for SSI.  (Doc. No. 18 at 4, n.2 ("Pursuant to POMS SI 0110.003, an individual's countable resources may not exceed $2,000 for an individual to be eligible for SSI; Plaintiff's resources (namely, his cars) were over the limit.")).[1]  On January 27, 2021, Plaintiff's application for DIB was also denied.  (R. at 94.)  Plaintiff requested reconsideration of the DIB denial and on August 2, 2021, his DIB application was denied again.  (R. at 103.)  Plaintiff then requested a hearing on the denial of his DIB application, and on January 12, 2022, a hearing was held before Administrative Law Judge Kathleen McDade ("ALJ").  (R. at 40-55, 114.)

---

[1]     In this case, Plaintiff is not seeking SSI benefits.

B.      **Relevant Social Security Administration Statutes**

Before the Court discusses the ALJ's decision regarding Plaintiff's DIB application, it is important to describe the legal standards applied by the Social Security Administration ("SSA") in determining DIB eligibility.

To prove a "disability," a claimant must demonstrate "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). The claimant has the burden of proving the existence of a disability and can satisfy this burden by showing an inability to return to former work. Rossi v. Califano, 602 F.2d 55, 57 (3d Cir. 1979). If he does so, the burden shifts to the Commissioner to show that, given the claimant's age, education, and work experience, he is able to perform specific jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.920(f).

When evaluating a disability, the SSA uses a five-step process, which is followed in a set order:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

(iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age,[2] education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

§ 404.1520(a)(4)(i)-(v).  Before going from the third to the fourth step, the Commissioner will assess a claimant's residual functional capacity ("RFC") based on all the relevant medical and other evidence in the case record.  Id.  The RFC assessment reflects the most an individual can still do, despite any limitations.  (Doc. No. 21 at 3.)

### C.     The ALJ's Decision

On March 2, 2022, the ALJ denied Plaintiff's DIB application.  (R. at 21-34.)  In her decision, the ALJ went through the five-step process outlined above.  At the first step, the ALJ found that Plaintiff did not engage in substantial gainful activity.  (R. at 23.)  At the second step, the ALJ found that Plaintiff suffered from the "severe impairments" of "depressive disorder, anxiety disorder, and bipolar disorder."  (Id.)  At the third step, despite finding that Plaintiff suffered from severe impairments, the ALJ found that Plaintiff "did not have an impairment or

---

[2]    According to the pertinent regulations:

"Age" means your chronological age. When we decide whether you are disabled under § 404.1520(g)(1), we will consider your chronological age in combination with your residual functional capacity, education, and work experience. We will not consider your ability to adjust to other work on the basis of your age alone. In determining the extent to which age affects a person's ability to adjust to other work, we consider advancing age to be an increasingly limiting factor in the person's ability to make such an adjustment....

C.F.R. § 404.1563(a).

combination of impairments that met or medically equaled the severity of one of the listed

impairments." (R. at 24.)

As described above, at the fourth step, the ALJ considered Plaintiff's residual functional

capacity and his past relevant work. (R. at 26.) At this step, the ALJ concluded that Plaintiff had

the "functional capacity to perform a full range of work at all exertional levels" but with certain

limitations. (Id.) Those limitations were that Plaintiff should be limited to performing work that:

> needs little or no judgment to do simple duties that may be learned on the job in a
> short period of time; involves no contact with the general public and only
> occasional interaction with co-workers and supervisors; the work should be goal
> rather than production-oriented, so that any work requirements can be made up by
> the end of the work day or shift.

(Id.)

In evaluating the fourth step, the ALJ considered a report from Dr. Amanda Kochan-

Dewey. (R. at 31.) On July 21, 2021, Plaintiff met with Dr. Kochan-Dewey on Zoom for a

consultive mental status examination. (R. at 29.) Their consultation was summarized by the ALJ

as follows:

> [Plaintiff] appeared for a July 2021 consultative mental status examination with Dr.
> Amanda Kochan-Dewey via Zoom. He reported he attended school in regular
> education until the sixth grade. He last worked landscaping in 2020. He had prior
> psychiatric hospitalizations after suicide attempts. He had outpatient mental health
> treatment of monthly medication management and three or four weekly calls or
> texts with his counselor, Erwin. He reported difficulty sleeping and variable
> appetite. He had signs of depression three to four days each week including
> dysphoric mood, loss of interest, loss of energy, social withdrawal, and difficulty
> concentrating. His moods changed quickly. Sometimes he had a lot of energy. He
> saw shadows and felt like there was a recording tape in his ear; it was hard to
> concentrate. He denied suicidal or homicidal ideation at that time. In 2014, he was
> charged with attempted murder and aggravated assault; he was incarcerated for four
> years, four months and now on parole. On examination, he was overall cooperative
> with a fair manner of relating. He was well groomed and appropriately dressed.
> His posture was normal; however, he kept either hitting or brushing off his face
> when trying to focus. His speech was fluent, and his thought process was goal
> directed. Dr. Kochan-Dewey noted there did not appear to be hallucinations,
> delusions, or paranoia but it was unclear why he was brushing his face off. His
> mood was neutral, and his affect was restricted. His sensorium was mildly

impaired. He had impaired attention and concentration; his memory was also impaired. His intellectual functioning was assessed as borderline with a somewhat limited fund of information. He showed poor insight and judgment. He could dress and bathe; he could also make some food, clean, do laundry, shop, and drive. He socialized with friends and family. He could go out to eat. He watched television, listened to music, used social media, and read. Dr. Kochan-Dewey diagnosed bipolar disorder, with psychosis. She indicated he could manage his own funds.

(R. at 29-30.)

The ALJ summarized Dr. Kochan-Dewey's findings as follows:

[Plaintiff] had moderate limitations in understanding, remembering, or carrying out simple instructions and moderate limitations making judgments on simple work-related decisions. [Dr. Kochan-Dewey] assessed marked limitations with respect to complex instructions or complex work-related decisions. [Dr. Kochan-Dewey] opined [Plaintiff] had marked limitations interacting appropriately with the public, supervisors, and co-workers and marked limitations responding appropriately to usual work situations or changes in a routine work setting. [Dr. Kochan-Dewey] noted no other capabilities were affected and opined [Plaintiff] could manage his benefits in his own best interest.

(R. at 31.)

The ALJ also found, however, that Dr. Kochan-Dewey's report was unpersuasive. (Id.)

The ALJ reasoned that:

Dr. Kochan-Dewey overstates [Plaintiff's] limitations and offers no explanation or support for the assessed marked limitations. Additionally, her examination does not support marked limitations. The claimant did demonstrate impairments in memory, attention, and concentration. However, he was also cooperative with normal speech, well groomed, able to engage via telehealth, showed a neutral mood, and reported adequate activities of daily living including driving and socializing. His examination and reported daily activities are not consistent with marked limitations, and Dr. Kochan-Dewey offers no explanation supporting these assessments. Moreover, this assessment is not consistent with the longitudinal treatment evidence. [Plaintiff] has maintained general stability since engaging in and maintaining outpatient treatment. He experienced an exacerbation of symptoms in late 2021, but also admitted medication noncompliance. When compliant with treatment, the claimant has exhibited stability and improvement since his onset date. Therefore, the undersigned concludes he has mild to moderate limitations, which are adequately accommodated by the residual functional capacity above.

(Id.) (internal citations omitted).

At the final step, the ALJ found that Plaintiff was "capable of performing past relevant work as a landscape laborer" and that work "did not require the performance of work-related activities precluded by the [Plaintiff's] residual functional capacity." (R. at 32.) At this step, the ALJ also made an alternate finding that Plaintiff would have been able to perform the work of other occupations such as cleaner, hand packager, and laundry worker. (R. at 33.)

For all those reasons, the ALJ denied Plaintiff's DIB application. (R. at 33-34.) Plaintiff requested a review of the ALJ's decision, and on January 6, 2023, the Appeals Council denied his request, which rendered the ALJ's decision final. (R. at 1.)

On February 22, 2023, Plaintiff filed this action under 42 U.S.C. § 405(g) to obtain review of the decision denying his claim for DIB. (Doc. No. 1.) In his Request for Review, Plaintiff makes three arguments: (1) the ALJ erred in finding the report of Dr. Amanda Kochan-Dewey, a consulting mental health examiner, unpersuasive, (2) the ALJ erred in failing to consider his mental health treatment records in evaluating his disabling symptoms, and (3) the ALJ's finding that he could work was contradicted by the vocational evidence. (See Doc. No. 13.) On September 1, 2023, the Court referred the matter to Magistrate Judge Reid for an R&R. (Doc. No. 20.) On September 28, 2023, Magistrate Judge Reid issued his R&R recommending that Plaintiff's request for review to be denied. (See Doc. No. 21.)

### D.    Plaintiff's Objections to the R&R

On October 4, 2023, Plaintiff filed his Objections to the Magistrate Judge's R&R. (Doc. No. 22.) In his Objections, Plaintiff raises three arguments. First, Plaintiff asserts that the ALJ erred in finding Dr. Kochan-Dewey's report to be unpersuasive. (Doc. No. 22 at 2-3.) Second,

Plaintiff argues that the ALJ should have found Plaintiff disabled pursuant to Listing 12.04[3] on the basis of Dr. Kochan-Dewey's opinion.  (Id. at 3-4.)  Third, Plaintiff argues that the ALJ erred in finding that the evidence showed Plaintiff's condition improved with treatment and medication. (Id. at 4.)[4]

On October 13, 2023, Defendant filed a Response in Opposition to Plaintiff's Objections to the R&R.  (Doc. No. 23.)  Plaintiff's Objections to the R&R are now ripe for a decision.  For the reasons that follow, the Court will overrule Plaintiff's Objections, approve and adopt Magistrate Judge Reid's R&R, and deny Plaintiff's request for review.

## III.   STANDARD OF REVIEW

When reviewing a final decision of the Commissioner, the Court must determine whether the record demonstrates substantial evidence to support the Commissioner's decision. 42 U.S.C. §§ 405(g), 1383(c)(3).  Substantial evidence is "more than a mere scintilla . . . [and includes] such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Cherry v. Barnhart, 29 Fed. Appx. 898, 901 (3d Cir. 2002) (quoting Richardson v. Perales, 402 U.S. 389, 407 (1971)).  The Commissioner's findings of fact, as long as they are supported by substantial evidence, are conclusive.  42 U.S.C. § 405(g).

---

[3]   As described above, SSA regulations require a five-step process in evaluating whether an individual qualifies as disabled.  See 20 C.F.R. §404.1520(4).  The third step of that process states:

At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

Id.  The appendix mentioned here is where Listing 12.04 can be found.  Listing 12.04 specifically pertains to depressive and bipolar disorders.

[4]   These three arguments cover the matters raised in the Request for Review, although they are worded somewhat differently.

Because the Commissioner adopts an ALJ's decision as his findings of fact, the ALJ must set out a specific factual basis for each finding. Baerga v. Richardson, 500 F.2d 309, 312 (3d Cir. 1974); see also 42 U.S.C. § 405(b)(1).[5] An ALJ must consider, evaluate, and refer to specific medical evidence in the record in his decision. See Reefer v. Barnhart, 326 F.3d 376, 381-82 (3d Cir. 2003). Based on this evidence, the ALJ determines whether a claimant proved a "disability," and the Commissioner adopts this decision as her finding of fact. Even if the record offers evidence that undermines the ALJ's conclusion, the Court will not overrule the decision of the ALJ unless the ALJ's finding is not supported by substantial evidence. Simmonds v. Heckler, 807 F.2d 54, 58 (3d Cir. 1986).

## IV.   ANALYSIS

### A.   Substantial Evidence Supports the ALJ's Evaluation of Dr. Kochan-Dewey's Report as Unpersuasive

Plaintiff argues that the ALJ erred in finding Dr. Kochan-Dewey's report to be unpersuasive. (Doc. No. 22 at 2.) He restates that, contrary to the ALJ's decision, the evidence supports Dr. Kochan-Dewey's assessment of marked limitations. (Id.) To support this argument, Plaintiff cites generally to certain treatment notes in the Record and to Dr. Kochan-Dewey's report. In this regard, Plaintiff describes in his Objections to the R&R what the Record and report shows,

---

[5]   Section 405(b)(1) provides in relevant part:

> The Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under this subchapter. Any such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based....

42 U.S.C. § 405(b)(1).

among other things, as follows: he "retained poor insight and judgment, abnormal psychomotor behavior . . . signs of depression . . . changes in mood quickly." (Id.)  Plaintiff further states that the "records show[] outburst, mood fluctuation, initial insomnia, probably racing thoughts, depression, worrying a lot, hearing voices, seeing shadows, bad dreams, paranoia, depression, anxiety, suicidal thoughts, and other mental health symptoms support[] a determination that he retained marked limitations." (Id.)  Therefore, Plaintiff maintains there was substantial evidence to support Dr. Kochan-Dewey's position that he retained marked limitations and that the ALJ erred in finding the doctor's report unpersuasive.

In assessing the persuasiveness of a medical opinion, an ALJ must consider the opinion's (1) supportability and (2) consistency with the evidence.  See 20 C.F.R. § 404.1520c(a)-(e).  In considering supportability the ALJ looks to:

> The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

See 20 C.F.R. § 404.1520c(c)(1).  In assessing consistency, the ALJ looks to:

> The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

See 20 C.F.R. § 404.1520c(c)(2).

Here, the ALJ decided that Dr. Kochan-Dewey's report was unpersuasive because it was not well supported, writing that "Dr. Kochan-Dewey overstates the [Plaintiff's] limitations and offers no explanation or support for the assessed marked limitations." (R. at 31.)  While the ALJ recognized that Plaintiff had some impairments in memory, attention, and concentration, he also was cooperative, well groomed, engaged in his mental status evaluation, and reported adequate daily activities such as socializing and driving.  (Id.)  This evidence did not support Dr. Kochan-

10

Dewey's finding of marked limitations.  The ALJ also found that Dr. Kochan-Dewey's report was not consistent with the evidence.  (Id.)  In making this finding, the ALJ discussed that the evidence shows that Plaintiff maintained general stability since engaging in treatment and that when he complied with treatment he exhibited improvement and stability.  (Id.)  Therefore, the ALJ found Dr. Kochan-Dewey's report to be unpersuasive.

As determined by Magistrate Judge Reid, there was sufficient evidence on the record for the ALJ to find Dr. Kochan-Dewey's report unpersuasive.  As stated by Magistrate Judge Reid, "[t]here is little doubt that [Plaintiff's] severe depressive, anxiety, and bipolar disorders caused him to suffer from symptoms relating to his ability to interact with others and respond appropriately to work situations."  (Doc. No. 21 at 7.)  However, the ALJ acknowledged this in limiting him to simple and low-stress work that did not require contact with the public and only occasional interactions with co-workers.  The dispute then becomes whether Plaintiff's limitations were "moderate" as the ALJ found, or "marked" as Dr. Kochan-Dewey found.

Social Security regulations inform a claimant that his functioning is moderate where "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair," while a marked limitation exists where a claimant's functioning is "seriously limited."  See 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

The Record supports a finding that Plaintiff's limitation was moderate rather than marked.  Plaintiff was able to participate independently in his mental status examination with Dr. Kochan-Dewey, as well as at his hearing before the ALJ.[6]  Dr. Kochan-Dewey herself reported that Plaintiff

---

[6]   In the R&R, Magistrate Judge Reid distinguishes Plaintiff's circumstances here to the plaintiff's circumstances in Krystopowicz v. Kijakazi, No. CV 21-1673, 2022 WL 2342568 (E.D. Pa. June 28, 2022).  (Doc. No. 21 at 8-9.)  In Krystopowicz, the court held that an ALJ erred in failing to consider relevant evidence in determining that the plaintiff had a moderate

appeared fully oriented with normal speech and a goal directed thought process.  Further, Plaintiff told Dr. Kochan-Dewey that he was able to drive, shop, and socialize with his friends and family.  (R. at 622.)

In support of his Objection, Plaintiff cites to evidence that he believes supports Dr. Kochan-Dewey's report.  However, "[t]he presence of evidence in the record that supports a contrary conclusion does not undermine the [ALJ's] decision so long as the record provides substantial support for that decision."  Malloy v. Comm'r of Soc. Sec., 306 F. App'x 761, 764 (3d Cir. 2009).  Instead, "[t]he reviewing court looks to the record as a whole to assess whether substantial evidence supports the Commissioner's decision."  Id.  As discussed, there was substantial evidence on the record to justify the ALJ's finding that Dr. Kochan-Dewey's report was not supported by the evidence or consistent with the whole of the evidence.  Therefore, Dr. Kochan-Dewey's report did not compel a finding of a marked limitation in interacting with others rather than a moderate one, and the Court will reject Plaintiff's Objection to the R&R on this basis.

## B. Substantial Evidence Supports the ALJ's Determination that Plaintiff Did Not Qualify as Being Disabled

Next, Plaintiff argues that if Dr. Kochan-Dewey's testimony had been given appropriate weight, the ALJ would have found Plaintiff disabled pursuant to Listing 12.04.  (Doc. No. 22 at 3.)  The ALJ concluded that "[t]he severity of the claimant's mental impairments, considered singly and in combination, did not meet or medically equal the criteria of listings 12.04 and 12.06."  (R. at 24.)  In his Objection, Plaintiff argues that if the ALJ credited Dr. Kochan-Dewey's report:

---

limitation.  Krystopowicz, 2022 WL 2342568, at *6-8.  In particular, the court found that the ALJ overlooked evidence that the plaintiff's mother had to intervene in his mental health evaluations because he was unable to explain why he was being evaluated or interact with the medical provider.  Id.  Magistrate Judge Reid correctly distinguished this case by noting that Plaintiff was able to participate in his examination where he could communicate adequately and did not seem confused by the purpose of the proceedings or the questions asked of him. (Doc. No. 21 at 9.)

a finding that Mr. De Jesus Nieves' impairments equal or meet a Listed Impairment would result because the marked limitations she assessed in his ability to interact appropriately in public, interact appropriately with supervisors, interact appropriately with coworkers, and respond appropriately to usual work situations and to changes in a routine work setting would support a determination that Mr. De Jesus Nieves retained marked limitations in the domains of interacting with others and adapting and managing oneself.

(Doc. No. 22 at 3.)

In her opinion, in reference to Plaintiff's limitation in the domains of interacting with others

and adapting and managing oneself, the ALJ wrote:

> In interacting with others, [Plaintiff] had a moderate limitation. [Plaintiff] reports difficulties with anxiety as well as anger; he endorses hallucinations and a preference for isolation and avoiding others. (Hearing Testimony, Exhibits B1F, B3F, B4F). However, he acknowledged increased engagement with family members with improvements from treatment. (Exhibits B3F, B6F). He acknowledged he could drive, shop in stores, and communicate with his family and kids. (Exhibits B5E, B10E, B3F, B6F). During medication management, he appeared as euthymic and calm. (Exhibits B3F, B6F). He was also described as cooperative with a fair manner of relating. (Exhibits B1F, B4F). The evidence supports prior issues regarding anger and aggression, resulting in charges and incarceration. However, the claimant has not had issues with rage or violence during the alleged disability period. (Exhibits B3F, B6F). Therefore, the undersigned concludes the evidence supports some, but no more than moderate, limitations in interacting with others.
>
> …
>
> As for adapting or managing oneself, [Plaintiff] had experienced a moderate limitation. [Plaintiff] reports persistent symptoms with waxing and waning of both depression and anxiety. However, he tells his psychiatric provider repeatedly he is stable. In late 2021, he reported a recurrence of suicidal ideation; however, he also acknowledged inconsistency with taking his medication. When his medication was restarted and adjusted, his symptoms improved. There is only one hospitalization; otherwise, the claimant's mental health treatment has been outpatient and generally conservative. (Exhibits B1F, B3F, B6F). As noted, he is independent with personal care and activities of daily living such as laundry, shopping, and driving. (Exhibits B5E, B10E, B4F). He demonstrates poor insight during a one-time consultative examination; however, he shows fair to good insight and judgment to his treating providers. (Exhibits B3F, B4F, B6F). He has good response to treatment and medication, noting his symptoms are generally controlled during the day. (Hearing Testimony). Therefore, the undersigned concludes there are some, but no more than moderate, limitations in adapting or managing oneself.

13

(R. at 25-26.)

As described in the opinion of the ALJ, substantial evidence supported the ALJ's finding that Plaintiff's limitation in interacting with others was moderate rather than marked, the ALJ's conclusion that Dr. Kochan-Dewey's report was unpersuasive, and the ALJ's finding that Plaintiff was not disabled.  Therefore, Plaintiff's second Objection to the R&R will be overruled.

### C. Substantial Evidence Supports the ALJ's Conclusion that Plaintiff had a Residual Functional Capacity to Work With Certain Limitations

Finally, Plaintiff argues that the ALJ erred in finding that his condition improved with medication and therapy in making her determination that Plaintiff had the residual functional capacity to perform a full range of work with certain limitations.  (Doc. No. 22 at 4.)  The ALJ concluded that:

> The claimant shows general stability and improvement with only conservative, outpatient treatment. Therefore, the undersigned concludes he is capable of work that needs little or no judgment to do simple duties that may be learned on the job in a short period of time; involves no contact with the general public and only occasional interaction with co-workers and supervisors; the work should be goal rather than production-oriented, so that any work requirements can be made up by the end of the workday or shift.

(R. at 32.)  As support for her finding that the evidence showed general stability and improvement, the ALJ referred to records that show improvement with medication compliance and Plaintiff's own reporting of improvement to medical providers.  The ALJ wrote:

> A July 2021 medication note indicates no auditory hallucinations or rage. He reported he was doing well. By August, he noted he was walking every morning; he had relaxing weeks with family and was able to run errands. He noted medication continued to help. Therapy records from September 2021 indicate the claimant thought about hurting himself; he was advised to go to the emergency room. However, he reported improvement at the next visit. In an emergently scheduled medication management note, he reported he had been out of medication for one week. He endorsed vague hallucinations commanding him to hurt himself at their worst; however, he reported he could ignore them and did not have suicidal ideation at that moment. His provider increased his Seroquel and added Wellbutrin. In early October, he told his therapist the new medication was working better; he was sleeping well and continued to feel improved. In October medication management,

14

he reported "everything is perfect" and attributed that to medication. He acknowledged the medications helped. He reported no ongoing mood issues and denied any suicidal ideation; he also reported no auditory hallucinations. He was continued on the higher dose of Seroquel. (Exhibit B6F).

While the claimant testified to ongoing hallucinations, he acknowledged his medications generally helped during daytime hours and hallucinations were worse if he did not have medications. He has been in steady treatment since his onset date without any additional hospitalizations. He admitted to an exacerbation in late 2021, but he also told his provider he had been out of medication for one week. When his doses were adjusted and restarted, his symptoms improved. (Exhibits B3F, B6F). The claimant testified he stays to himself and does not go out; however, therapy notes indicate increased engagement with family members, going out for daily walks, reading in the park, and the ability to run errands. (Exhibits B3F, B6F). There is also no indication in therapy notes that the claimant suffered persistent hallucinations in spite of medication; he generally endorsed stability and improvements in symptoms to his treating providers. (Exhibits B3F, B6F).

(R. at 30.)

Plaintiff argues that the ALJ erred in failing to consider evidence that even when he complied with his medication routing, he continued to experience suicidal ideations, the need for hospitalizations, and continuing anxiety. (Doc. No. 22 at 4.) As Magistrate Judge Reid notes, "[a]lthough [Plaintiff's] condition improved with medication and therapy during and after his hospitalization, his subsequent therapy notes continued to reflect meaningful challenges." (Doc. No. 21 at 13.) However, the ALJ did not dispute that there were challenges. She found Plaintiff moderately limited in the domains of interacting with others, adapting and managing himself, and concentration and persistence. (R. at 25.) In discussing these limitations, as quoted above, the ALJ acknowledged the evidence that Plaintiff reported hallucinations, self-isolation, anxiety, and suicidal ideations. Nevertheless, the ALJ found that the evidence supported general stability and improvement. In this regard, Plaintiff's Objection here is essentially a request to reweigh the evidence considered by the ALJ. However, as noted above, there is a deferential standard of review and "[i]nherent to this deferential standard of review is the rule that even if there is contrary

evidence in the record that would justify the opposite conclusion, the ALJ's decision will be upheld if it is also supported by the evidence." Parsons v. Barnhart, 101 F. App'x 868, 869 (3d Cir. 2004).

Here, the ALJ weighed the evidence of Plaintiff's improvement with the evidence of his continuing challenges and concluded that the evidence showed that Plaintiff was capable of work with certain limitations. As described above, this conclusion was supported by substantial evidence. For these reasons, Plaintiff's Objection to the Magistrate Judge's finding upholding the ALJ's decision on Plaintiff's residual functional capacity to perform a full range of work with certain limitations will be overruled.

## V.   CONCLUSION

For the foregoing reasons, the Court will approve and adopt the Report and Recommendation of Magistrate Judge Scott W. Reid. (Doc. No. 21.) An appropriate Order follows.